**Tae Mun CHUNG and Song Hui Kim, Appellants,**

v.

**Jeong Ran LEE, Appellee.**

**No. 05–05–00596–CV.**

Court of Appeals of Texas, Dallas.

May 23, 2006.

Rehearing Overruled June 22, 2006.

Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, for Appellant.

Vishal Chander, The Chander Law Firm, Dallas, and Eun–Hyuk Yi, Law Office of Nathan Yi, McKinney, for Appellant.

Before Justices WRIGHT, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WRIGHT.

Tae Mun Chung and Song Hui Kim appeal the judgment awarding Jeong Ran Lee damages for breach of contract. In two issues, appellants contend (1) the evidence conclusively established they did not breach the contract, and (2) there is no evidence of damages. We overrule appellants' issues and affirm the trial court's judgment.

Appellee agreed to purchase a coin-operated laundry from appellants for $170,000. Appellee paid appellants $5000 in earnest money and $55,000 as a down payment. Appellants agreed to finance the remainder of the purchase price with the equipment in the laundry serving to secure the loan. At the time of the negotiations, appellee and her husband, Jea Mun Kang, asked about transferring the commercial lease for the laundry into their name. Chung told them the lease was in his name, it was due to expire in December 2001, and it would be difficult to transfer the lease. Chung asked appellee and her husband to wait a few months for the lease transfer because appellants were going to Korea. According to Chung, they would be returning in February 2002, and Chung

would take care of transferring the lease at that time. Appellee agreed to wait for the lease transfer until appellants returned from Korea.

Appellee signed the purchase and sale agreement and accompanying security agreement on October 15, 2001. She and her husband began to operate the business that same day. Appellants did not return from Korea in February 2002, and appellee and her husband tried repeatedly to contact them in Korea. Kang did not speak with Chung about the lease transfer until December 2002. According to appellee, Chung began to make excuses about why he could not transfer the lease. He then refused to transfer the lease unless appellee paid the remainder of the purchase price with a bank loan. Appellee contacted a bank and was told she would not be able to obtain a loan without the lease transfer. A short time later, appellee filed suit for breach of contract, deceptive trade practices, and fraud. Appellants subsequently filed suit in county court, alleging appellee breached the contract and a counterclaim in this suit alleging Kang falsely imprisoned Chung. The suit in county court was later consolidated with this suit.

A short time after appellee filed suit, Kang met with the building manager who presented him with a lease agreement, guaranty of rents, and an assignment of the lease. Kang signed the documents and returned them to the building manager. When he did so, Chung was in the office. After a discussion, Chung asked if the matter would be settled if he returned appellee's money. Kang agreed, and the building manager tore up the documents Kang had signed. A few days later, Kim came to the laundry and told appellee that, since returning from Korea, she did not have anything to do. Kim told appellee she intended to "take over the store" and run the business. A short time later, the

landlord came to the laundry and gave appellee certain documents to sign. He told appellee to dismiss the lawsuit or "get out." Appellee did not sign the documents because she did not trust the landlord. After she refused, Kim told the landlord to "kick them out," and the landlord gave appellee one week's notice to vacate the premises. Appellee left the business and did not make further payments on the loan. Appellants took possession of the business and sold it to another purchaser.

Chung denied discussing transfer of the lease to appellee until he received a telephone call in Korea. According to Chung, that was the only telephone call he received from appellee or her husband regarding the lease transfer. After he returned from Korea, Chung went to see the landlord. Appellee and her husband were there, requesting a lease assignment. Later, Chung decided he would give them the lease assignment even though they "didn't really need it." He went to the laundry and Kang "shut the door and told [Chung] to just wait until [Kang's] attorney arrived." After an hour, the attorney had not arrived and Chung was hungry and tried to leave. Kang pushed Chung to the side and shut the door. Four hours later, the attorney arrived, and Kang pushed Chung into the office. The property manager came into the office a short time later. Later, Kang and Chung signed a lease transfer, but, according to Chung, the landlord would not sign it. On cross-examination, Chung explained that he did not transfer the lease because he was not required to do so until the loan was paid off.

After hearing this and other evidence, the jury determined that appellants had breached the contract and committed deceptive trade practices and fraud. However, the jury only awarded damages on the breach of contract claim. The jury also

found that appellee breached the security agreement, but her breach was excused, and found Kang did not falsely imprison Chung. This appeal, complaining only of the breach of contract claim, followed.

In their first issue, appellants contend the evidence is legally and factually insufficient to show they breached the contract with appellee. Specifically, appellants maintain that the contract provides they were to provide an assignment of the lease at closing, and they provided two documents—a sublease agreement provided at closing, and an assignment of the lease dated almost a year and one-half after closing—that satisfied this requirement. Thus, according to appellants, "as a matter of law, either appellants' performance was excused or was rendered impracticable by appellee's actions or refusal to act." Appellants do not argue or analyze their factual sufficiency complaint. Thus, we limit our discussion to appellants' legal sufficiency challenge. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.-Dallas 1995, writ denied)(bare assertions of error, without argument or authority, waive error); *Devine v. Dallas County*, 130 S.W.3d 512, 514 (Tex.App.-Dallas 2004, no pet.) (party waives issue on appeal by failing to adequately brief complaint).

Because appellants are attacking the legal sufficiency of an adverse finding on an issue on which they did not have the burden of proof, they must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002). We sustain a no-evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *Id.* at 520. In making this determination, we must "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005).

The jury found that appellants agreed they would assign the lease to appellee, appellants failed to do so, and their failure to do so was not excused. The purchase agreement provides the assignment of the lease was to be provided at closing. At trial, appellee and Kang testified that the lease was never transferred and the record does not contain any documentary evidence showing the lease was transferred. Thus, the record contains evidence from which a reasonable jury could determine appellants breached the contract.

Nevertheless, appellants maintain the evidence is legally insufficient because contrary evidence shows they did not breach the contract. Appellants first rely on the unexecuted sublease agreement they provided at closing. A lease assignment is the transfer by a party of all of its rights in a lease. BLACK'S LAW DICTIONARY 109 (5d ed.1979). In contrast, a sublease is a transaction by which a tenant grants interests in leased premises less than his own, or reserves to himself a reversionary interest in the term of the lease. *Id.* at 1278.

Here, the sublease agreement provided, among other things, (1) appellee was precluded from assigning or subleasing the premises without appellants' consent, (2) appellants reserved the right of access, and (3) appellee must provide appellants with copies of keys and security codes to the premises. Thus, the sublease agreement did not transfer all of appellants' rights under the lease to appellee. Consequently, a reasonable jury could disregard

the sublease agreement as evidence that appellants did not breach the agreement.

Appellants also contend they later provided a lease assignment that appellee and her husband failed to sign, rendering the evidence of breach of contract insufficient. The purchase agreement provides the lease assignment was to be provided at closing. The document relied on by appellants was not provided to appellee until late February or early March 2003, one and one-half years after closing. Further, appellee testified that the lease assignment was presented to her after she had filed suit and the same day (1) Kim told appellee she intended to "take over the store" and run the business, and (2) the landlord told appellee to dismiss the lawsuit or "get out." Under these circumstances, a reasonable jury could disregard the lease assignment provided in March 2003 as evidence that appellants met their obligation to transfer the lease.

After reviewing the evidence under the appropriate standard, we conclude there is legally sufficient evidence to support the jury's determination that appellants failed to provide appellee with an assignment of the lease. We overrule appellants' first issue.

■ In their second issue, appellants contend the evidence is legally and factually insufficient to support the damage award. Under this point, appellants acknowledge the jury's award of $95,343.15 "matches precisely the amounts paid by appellee" pursuant to the contract. However, according to appellants, we must reverse the damage award because there is "no evidence to support any finding that any breach by [a]ppellants proximately caused any damages to [a]ppellee." In support of this argument, appellants rely on cases involving damages for torts. Because the complained-of damages in this case arise from a breach of contract we conclude the cases relied on by appellants are inapplicable.

■ Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. *O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 247 (Tex.App.-San Antonio 1998, pet. denied). When, as here, a party makes a substantial investment in performing the agreement and the agreement is breached, she is entitled to have that investment returned. *Id.*

Appellee sued appellants for breach of contract, deceptive trade practices, and fraud. She requested (1) restitution of all payments made to appellants as part of the purchase price of the laundry; (2) loss of income; (3) cost of repairs; (4) interest and finance charges assessed by appellee; (5) treble, mental anguish, and punitive damages; and (5) attorney's fees. The jury found that the agreement had been breached and was instructed to consider only reliance interests in determining damages for the breach. Appellants did not object to the jury question, and acknowledge on appeal that the amount awarded by the jury "matches precisely" the amount appellee paid in performance of the purchase and sale agreement. Consequently, we conclude appellants' argument lacks merit. We overrule appellants' second issue.