**Opinion issued March 18, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01087-CV

———————————

**KATHIE DIGILIO, Appellant/Cross-Appellee**

**V.**

**TRUE BLUE ANIMAL RESCUE, Appellee/Cross-Appellant**

---

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. 16-10-23953**

---

## MEMORANDUM OPINION ON REHEARING

Appellee and Cross-Appellant, True Blue Animal Rescue (TBAR), filed a motion for rehearing of this Court's July 28, 2020 opinion. We deny the motion for rehearing, but we withdraw our July 28, 2020 opinion and judgment and issue this opinion and judgment in their stead.

This case began as an animal cruelty case in which the Waller County District Attorney's Office (WCDAO) removed 34 horses from the care of appellant/cross-appellee Kathie Digilio and prosecuted her for animal cruelty. The criminal proceeding against her was ultimately dismissed, and WCDAO reached a settlement with Digilio in the civil divestiture proceedings by which 24 of the seized horses would be given to appellee/cross-appellant True Blue Animal Rescue (TBAR), three of the seized horses would be returned to a third-party buyer, and seven horses would be returned to Digilio. Digilio also agreed to pay (and did actually pay) TBAR $30,000 for its care of the horses while the animal cruelty case was pending. The justice court with jurisdiction over the cruelty case rendered a judgment effectuating the agreement between WCDAO and Digilio.

This appeal arises out of TBAR's collateral attack, filed in the 506th District Court of Waller County (the trial court), seeking to declare void portions of the justice court's judgment, asking the trial court to declare that TBAR should be awarded all 34 seized horses and that Digilio should pay TBAR $232,900.09 for boarding and caring for the horses. Digilio asserted counterclaims against TBAR for conversion of her seven horses, tortious interference with her agreement with WCDAO, and injunctive relief. The trial court granted summary judgment dismissing both TBAR's claims for declaratory relief and Digilio's counterclaims.

Both TBAR and Digilio now challenge the trial court's granting of summary judgment.

Because we conclude that TBAR was not entitled to its requested declaratory relief as a matter of law and that Digilio failed to provide evidence of an essential element of her counterclaims, we affirm.

## Background

### A. Waller County seized Digilio's horses/Resolved in Justice Court:

On July 9, 2015, pursuant to a search and arrest warrant, an officer with the WCDAO arrested Digilio, charged her with felony animal cruelty, and seized 34 horses from her property. TBAR, a 501(c)(3) charitable organization dedicated to animal welfare and adoption, agreed to shelter the horses. The next day, TBAR received possession of the 34 horses.

Over a year later, the case against Digilio remained pending. On August 1, 2016, the Waller County Justice Court, Precinct 1, (justice court) issued a seizure warrant pursuant to Texas Health and Safety Code section 821.022, providing that TBAR maintain custody of the horses and setting a hearing:

> [T]he animals shall be IMPOUNDED and held in the custody and control of . . . True Blue Animal Rescue in accordance with Section 821.022, Health and Safety Code, for the purpose of a hearing to determine whether the animal(s) has/have been cruelly treated as defined under the laws of the State of Texas.

3

At the time this warrant issued, TBAR had been in possession of the horses for more than a year. Attached to the warrant was (1) a list of the 34 horses that had been seized in July 2015, describing each horse and its body condition at the time of seizure; (2) an expert report from large-animal veterinarians stating concerns with the poor body condition of the horses, the size and quality of pastures, the unrestrained breeding that was increasing the size of the herd, and the amount of food and veterinary care the animals were receiving; and (3) the affidavit for the search and arrest warrant from July 2015.

WCDAO subpoenaed TBAR's president, Melanie DeAeth, to testify at the hearing set on September 2, 2016. DeAeth appeared and was prepared to testify; however, no hearing occurred because WCDAO and Digilio came to an agreement. DeAeth provided an affidavit in which she averred that she "was not given an opportunity to present evidence to the [justice court] regarding TBAR's costs incurred," which she claimed totaled $232,900.09. DeAeth further asserted that she would have testified to "the condition of the horses and TBAR's opposition" to the horses being returned to Digilio.

Rather, on September 2, 2016, prior to the hearing being held, the WCDAO and Digilio reached an agreement regarding disposition of the horses, and the justice court signed an order titled "Order: Cruelly Treated Animals Hearing (Sec. 821.023 H.S.C.)" in light of this agreement (September 2 Order). The justice court found that

4

Digilio was the owner of the 34 seized horses and that Digilio treated the animals cruelly "by improperly caring for the horses and maintaining too many horses on her property." The justice court ordered that Digilio "be divested of ownership of . . . 27 horses including three sold prior to seizure,"[1] referring to the "court order and agreement reflected and entered by the parties."

The September 2 Order further provided that "the 24 horses as per the agreement between the State of Texas [as represented by the WCDAO] and defendant [Digilio]" be given to TBAR and that the "three horses including 'Flyer' [be] returned to their owners per the agreement." The justice court ordered the return of seven of the horses to Digilio, as provided for in the parties' agreement. Finally, the justice court found "that the estimated costs likely to be incurred to house and care for the impounded animals during the appeal process is $30,000. It is therefore ordered that the amount of the bond necessary to perfect an appeal is $30,000."

On September 19, 2016, the "Agreement of Kathie Digilio and the Waller County District Attorney's Office" that was referenced in the September 2 Order was filed. The Agreement explained that "Digilio is awarded seven horses to be

---

[1] After the horses were seized, Digilio provided law enforcement with information indicating that she had previously sold some of the horses to a third party. The record is unclear regarding exactly when these sales occurred, but Digilio and the WCDAO eventually identified Clint Kolz as the third party to whom Digilio had sold three of the seized horses.

chosen by her after payment of restitution to True Blue through the District Attorney's Office." The Agreement further stated,

> Three individuals shall complete paperwork or submit bills of sale to the District Attorney's Office in order to acquire three horses that were purchased prior to the seizure. . . . One of these horses is identified as 'Flyer' and he shall be picked up upon payment of $12,000 restitution made out to True Blue. The other two horses shall be picked up by their owners or qualified designees after the remaining restitution has been paid to the District Attorney's Office, namely the sum of $18,000 due on September 16, 2016, payable to the District Attorney's Office. . . .
>
> Once the restitution mentioned above is paid to the District Attorney's Office, the ten horses mentioned above shall no longer be the property of True Blue. . . .
>
> Digilio shall reimburse True Blue in the sum of $30,000 for the care of the horses including $12,000 paid by September 2, 2016 and $18,000 paid within two weeks. Payment shall be made to the WCDA who shall then tender the amounts to True Blue. . . .
>
> This agreement is only valid between and applicable to the District Attorney's Office and the defendant through the court and the court order entered September 2, 2016. No other parties, including True Blue, are parties to this agreement.

The Agreement also provided for Digilio to obtain "certification" of her property as being appropriate to care for the number of horses she has; prohibited her from acquiring new horses, including through breeding; and stated that Digilio waived her right to appeal the justice court's order regarding possession of the horses although "[t]he criminal case and appeals therefrom are not affected by this hearing or agreement."

6

The Agreement concluded at the bottom: "This agreement is a reflection of the agreement and court order entered in the Honorable Court on September 2, 2016 and is adopted by the Court as the final and binding court order in this case." It was signed by the justice court on September 19, 2016.

On October 3, 2016, the justice court rendered a supplemental order revising its findings and final order (October 3 Supplemental Order). The justice court again found that Digilio was the owner of the 34 horses seized from her property and described them particularly in an inventory attached to the supplemental order. The justice court further found that "7 horses are awarded to Kathie Digilio pursuant to the agreement in this file" and identified the horses by their number in the attached inventory. The justice court awarded three specific horses to a third-party buyer, Clint Kolz, and it found "that the remaining 24 horses were subject to unintentional mistreatment and are awarded to True Blue Animal Rescue pursuant to an agreement entered into between the State of Texas [as represented by the WCDAO] and the defense [Digilio] that these horses are the personal property of [TBAR]." Finally, the October 3 Supplemental Order required Digilio to pay costs of $30,000, noting that these costs were "previously paid pursuant to the agreement as reimbursement for the costs of True Blue Animal Rescue."

The October 3 Supplemental Order did not include any findings regarding cruel treatment of the 10 horses awarded to Digilio and Kolz. It further stated,

7

"[T]his Supplemental Order shall supersede and take the place of the previous Court Ordered entered and filed on September 2, 2016, thereby making this the final order on this case."

## B.  TBAR's Suit against the County in District Court

On October 3, 2016, the same day the justice court rendered its October 3 Supplemental Order, TBAR filed the underlying suit against Waller County. In its original petition, TBAR alleged that Waller County and Digilio "determined amongst themselves that Digilio would reimburse TBAR $30,000.00 for the care of the 34 horses that TBAR boarded, fed, cared for, paid veterinary bills and nursed back to health for 15 months," but that TBAR itself "was not a part of that negotiation" and that the amount of reimbursement "is far lower than what TBAR has paid to care for these 34 horses." TBAR alleged that, at the time it filed suit, its total expenses were $232,900.09.

TBAR relied on Health and Safety Code chapter 821 in challenging the justice court's orders. Health and Safety Code chapter 821 permits a peace officer to apply for a warrant to seize an animal if the officer has reason to believe that the animal has been cruelly treated. TEX. HEALTH & SAFETY CODE § 821.022(a). Section 821.022 further provides:

> (b) On a showing of probable cause to believe that the animal has been or is being cruelly treated, the court or magistrate shall issue the warrant and set a time within 10 calendar days of the date of issuance for a

8

hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated.

(c) The officer executing the warrant shall cause the animal to be impounded and shall give written notice to the owner of the animal of the time and place of the hearing.

*Id.* § 821.022(b), (c). Section 821.023 provides guidance for chapter 821 hearings and the resulting orders. In relevant part, section 821.023 provides:

(d) If the court finds that the animal's owner has cruelly treated the animal, the owner shall be divested of ownership of the animal, and the court shall:

(1) order a public sale of the animal by auction;

(2) order the animal given to a municipal or county animal shelter or a nonprofit animal welfare organization; or

(3) order the animal humanely destroyed if the court decides that the best interests of the animal or that the public health and safety would be served by doing so.

(e) After a court finds that an animal's owner has cruelly treated the animal, the court shall order the owner to pay all court costs, including:

(1) the administrative costs of:

(A) investigation;

(B) expert witnesses; and

(C) conducting any public sale ordered by the court; and

(2) the costs incurred by a municipal or county animal shelter or a nonprofit animal welfare organization in:

(A) housing and caring for the animal during its impoundment; and

(B) humanely destroying the animal if destruction is ordered by the court.

*Id.* § 821.023(d), (e). Section 821.023(g) states, "The court shall order the animal returned to the owner if the court does not find that the animal's owner has cruelly treated the animal." *Id.* § 821.023(g).

In its live pleading,[2] TBAR cites section 821.023(d) and (e) to support its assertion that the justice court's orders found that Digilio had cruelly treated all 34 horses and, thus, required that she be divested of all 34 horses and ordered to pay TBAR's full costs. Relevant here, TBAR sought declaratory judgment that the justice court's September 2 Order is void to the extent it is inconsistent with Health and Safety Code sections 821.023(d) (requiring divesture of horses if the court finds the owner treated animal cruelly) and 821.023(e)(2)(A) (requiring award of costs, including costs associated with housing and caring for the animal during its impoundment) and also that the justice court's October 3 Supplemental Order was void "in its entirety because it is outside the plenary power of that court." TBAR asked the trial court to award it ownership of all 34 horses and to require Digilio to pay $230,900.09 "for all of its costs for housing and caring for the horses during

---

[2]    TBAR's live pleading included counterclaims against Digilio to recover the costs it incurred in caring for and housing the horses under theories of quantum meruit, unjust enrichment, and a stable keeper's lien under Texas Property Code section 70.003. TBAR non-suited these claims following the trial court's granting of Digilio's summary judgment on TBAR's declaratory judgment claims, and they are not before us in this appeal.

their impoundment because [Digilio] was found to have cruelly treated all 34 horses."

TBAR also sought a temporary restraining order and a temporary injunction. The trial court granted the TRO; but, following a hearing, it denied TBAR's request for a temporary injunction against Waller County, prohibiting the enforcement of the justice court's judgment. TBAR filed an interlocutory appeal of the trial court's denial of the temporary injunction, and this Court affirmed the trial court's denial. *See True Blue Animal Rescue, Inc. v. Waller County*, No. 01-16-00967-CV, 2017 WL 1434273, at *3 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, no pet.) (mem. op.).

Meanwhile, Digilio intervened in TBAR's suit against Waller County in the trial court, asserting causes of action, including conversion and tortious interference, and requesting injunctive relief to require TBAR to return the seven horses given to her in the October 3, 2016 Supplemental Order based on her Agreement with the WCDAO. She alleged that TBAR wrongfully exercised control over her seven horses, that it tortiously interfered with her Agreement with the WCDAO that formed the basis of the justice court's judgment, and that it should be enjoined from withholding the horses from her.

In addition, TBAR transferred the $30,000 that Digilio had paid in connection with the justice court's orders into the trial court's registry. TBAR asserted that it

11

deposited the funds because it wanted to make clear that it would not accept the $30,000 as satisfaction of its claims against Digilio.

On January 6, 2017, while the underlying case (including the interlocutory appeal of the trial court's denial of a temporary injunction) was pending, the trial court dismissed the criminal case against Digilio. The State claimed that it sought dismissal of the criminal charges against Digilio due to "State's witness credibility concerns." Following the dismissal of the criminal case in January and this Court's resolution of the interlocutory appeal in April 2017, TBAR nonsuited its claims against Waller County and moved for summary judgment against Digilio. In two motions for summary judgment, one in May 2017 and the other in December 2017, TBAR moved for summary judgment on its own claims for declaratory judgment, but the trial court denied these motions.

In parallel proceedings, a separate suit between Digilio and her neighbors, including Christin McCumber, was working its way through the courts. The trial court resolved the McCumber case against Digilio and rendered judgment in favor of the McCumber parties. The trial court signed an order granting turnover and appointing a receiver to satisfy the judgment in the McCumber case. The receiver determined that the seven horses awarded to Digilio by the justice court were

personal property subject to the turnover order and asked TBAR to continue housing the horses while the underlying dispute regarding their ownership was pending.[3]

On April 6, 2018, Digilio filed a traditional and no-evidence motion for partial summary judgment asking the trial court to deny TBAR's claims for declaratory judgment. Digilio argued that TBAR was not entitled to declaratory judgment and that the justice court's orders were not void. The trial court granted Digilio's motion and signed an order dismissing TBAR's claims for declaratory relief.

On October 5, 2018, TBAR filed its own traditional and no-evidence motion for summary judgment. TBAR's motion asked the trial court to render judgment that Digilio take nothing from TBAR on Digilio's claims for conversion, tortious interference, and injunctive relief. The trial court granted TBAR's motion and ordered that Digilio take nothing on each of her claims against TBAR.

The trial court subsequently rendered its final judgment, and this appeal followed.

## Summary Judgments

The trial court resolved this case by rendering summary judgment on both TBAR's and Digilio's claims. Both parties now challenge the trial court's motions for summary judgment.

---

[3]    The receiver also paid TBAR $8,000 on Digilio's behalf for the boarding and care of the horses during the underlying litigation. This amount was also deposited into the registry of the court.

A party seeking summary judgment may combine in a single motion a request for summary judgment under both the no-evidence and the traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004).

To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.— Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A matter is

conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland v. Taylor*, 397 S.W.3d 683, 697 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Therefore, when a defendant moves for a traditional summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661

15

(Tex. 2005); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697. A genuine issue of material fact is raised when the nonmovant produces more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013).

If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

### TBAR's Appeal

TBAR sought a declaration that the justice court's October 3, 2016 Supplemental Order was void because it was rendered outside the court's plenary power. TBAR also sought a declaration that the justice court's September 2, 2016 Order and the Agreement between the WCDAO and Digilio, which was filed and signed by the justice court on September 19, 2016, were void to the extent that they (1) were inconsistent with Health and Safety Code sections 821.023(d) and 821.003(e)(2)(A); (2) awarded horses back to Digilio that she had treated cruelly; and (3) failed to award TBAR all of the horses and all of its $232,900.09 in costs for the care and housing of the impounded horses.

16

On appeal, TBAR argues that the trial court erred in granting summary judgment denying the requested declaratory relief. It continues to assert that the justice court's orders were void, in whole or in part, and that its collateral attack on the justice court's orders by filing this declaratory judgment suit is the proper procedural vehicle for attacking the justice court's judgment.

## A.    Justice Court's Orders

To address TBAR's arguments on appeal, we must first examine the justice court's jurisdiction to render the orders that comprise its judgment in the divestiture proceeding. The Texas Constitution provides that the justice courts' jurisdiction includes "such other jurisdiction as may be provided by law." TEX. CONST. art. V, § 19; *see also* TEX. GOV'T CODE § 27.031 (setting out current jurisdiction of justice courts). Pursuant to this constitutional authority, the legislature passed Health and Safety Code chapter 821 to provide justice courts with special and limited jurisdiction over actions alleging cruel treatment of animals. *See* TEX. HEALTH & SAFETY CODE §§ 821.022–.025; *Chambers v. State*, 261 S.W.3d 755, 759 (Tex. App.—Dallas 2008, pet. denied); *Pitts v. State*, 918 S.W.2d 4, 4 (Tex. App— Houston [14th Dist.] 1995, no writ); *see also Granger v. Folk*, 931 S.W.2d 390, 392 (Tex. App.—Beaumont 1996, orig. proceeding) (recognizing that "two avenues exist for the State in protecting animals from cruel treatment, i.e., criminal prosecution under . . . the Penal Code and the civil remedy provided under Section 821.023 of

17

the Health and Safety Code"). It is undisputed that the justice court had jurisdiction over the divestiture proceedings that TBAR now attacks.

TBAR first asserts that the justice court's October 3 Supplemental Order was rendered after the court's plenary power had expired. Under Texas Rule of Civil Procedure 507.1, a justice court "loses plenary power over a case when an appeal is perfected or if no appeal is perfected, 21 days after the later of the date judgment is signed or the date a motion to set aside, motion to reinstate, or motion for new trial, if any is denied." TEX. R. CIV. P. 507.1. Furthermore, Rule 500.02(o) defines "judgment" as "a final order by the court that states the relief, if any, a party is entitled to or must provide." TEX. R. CIV. P. 500.2(o).

To determine whether the justice court signed its October 3 Supplemental Order outside of its plenary power, we examine all the orders rendered by the justice court in the divestiture proceeding. On September 2, 2016, rather than holding a divestiture hearing pursuant to chapter 821, the justice court signed an order based on the agreement reached by the WCDAO and Digilio. The September 2 Order contained findings that Digilio was the owner of 34 horses that had been seized and that Digilio treated the animals cruelly "by improperly caring for the horses and maintaining too many horses on her property." The September 2 Order provided that Digilio "be divested of ownership of . . . 27 horses including three sold prior to seizure."

18

The September 2 Order awarded ownership of 24 horses to TBAR, ordered that the three horses purchased by a third party be "returned to their owners," and ordered that seven of the horses be returned to Digilio. The September 2 Order did not identify which 24 out of the 34 seized horses should be awarded to TBAR, which 7 of the 34 horses should be returned to Digilio, or which 3 horses belonged to a third party beyond identifying the horse known as "Flyer" as one of these three.

Nor did the September 2 Order award any costs. The justice court found in the September 2 Order "that the estimated costs likely to be incurred to house and care for the impounded animals during the appeal process is $30,000" and thus ordered that "the amount of the bond necessary to perfect an appeal is $30,000." The order did not include any language of finality. Instead, the September 2 Order expressly stated, "[S]ee court order and agreement reflected and entered by the parties."

Seventeen days later, on September 19, 2016, the justice court signed the "Agreement of Kathie Digilio and the Waller County District Attorney's Office" that was referenced in the September 2 Order. This document stated: "This agreement is a reflection of the agreement and court order entered in the Honorable Court on September 2, 2016 and is adopted by the Court as the final and binding court order in this case." The Agreement set out the specific terms Digilio was required to satisfy in order to obtain the return of seven horses, including how the

19

parties were to determine which horses would be awarded to which parties and the amount of restitution to be paid to TBAR.

Fourteen days later, the justice court signed its October 3 Supplemental Order, which stated that the supplemental order "shall supersede and take the place of the previous Court Order entered and filed on September 2, 2016 thereby making this the final order on this case." In this order, the justice court omitted any finding regarding cruel treatment of the seven horses returned to Digilio or the three horses bought by Kolz, the third-party buyer. Regarding the remaining 24 horses—the ones awarded to TBAR—the justice court found they "were subject to unintentional mistreatment and are awarded to True Blue Animal Rescue pursuant to an agreement entered into between the State of Texas [as represented by the WCDAO] and the defense [Digilio] and that these horses are the personal property of [TBAR]."

TBAR's assertion that this October 3 Supplemental Order was signed outside the justice court's plenary power assumes that the September 2 Order was the final order of the justice court. The record does not support this assumption. A judgment rendered without a conventional trial on the merits is final if it disposes of all pending parties and claims in the record. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192–93, 195 (Tex. 2001); *see also* TEX. R. CIV. P. 500.2(o) (defining "judgment" in justice court proceedings as "a final order by the court that states the relief, if any, a party is entitled to or must provide."). Whether a judicial decree is a final judgment

20

must be determined from its language and the record in the case. *Lehmann*, 39 S.W.3d at 192.

The September 2 Order did not satisfy *Lehmann*'s finality requirement. For example, it did not award any costs or identify the specific horses to be awarded to the various interested parties. The September 2 Order did not contain finality language, and, instead, expressly referenced the "court order and agreement reflected and entered by the parties." *See id.* at 200 (observing that "the language of an order or judgment *can* make it final . . . if that language expressly disposes of all claims and all parties" and that "[t]he intent to finally dispose of the case must be unequivocally expressed in the words of the order itself"). The justice court signed the referenced "court order and agreement" on September 19, 2016, which is 17 days later. The Agreement provided the details of Digilio's arrangement with the WCDAO regarding disposition of all 34 seized horses, and it expressly provided, "This agreement is a reflection of the agreement and court order entered in the Honorable Court on September 2, 2016 and is adopted by the Court as the *final and binding court order* in this case." (Emphasis added.) Thus, based on the language of the orders themselves and the record in this case, we determine that the September

21

19 agreement and order was the final order, not the September 2 Order.[4] *See id.*; *see also* TEX. R. CIV. P. 500.2(o).

The October 3 Supplemental Order was signed within 14 days after the justice court's adoption of the Agreement as its "final and binding order" resolving the divestiture proceedings. Thus, the October 3 Supplemental Order was rendered while the justice court still had plenary power. *See* TEX. R. CIV. P. 507.1 (providing that justice court loses plenary power 21 days after later of date judgment is signed or date motion to set aside, motion to reinstate, or motion for new trial, if any is denied).

Accordingly, we overrule TBAR's contention that the October 3 Supplemental Order was rendered outside the justice court's plenary power.

## B.    Collateral Attack

TBAR's underlying suit seeking a declaratory judgment that the justice court's orders in this case were void constitutes a collateral attack. Digilio moved for summary judgment on TBAR's declaratory judgment claims, asserting in relevant part, that the collateral attack was improper because the justice court's

---

[4]    Even if the September 2 Order could be considered a final order, we note that the September 19 Agreement was adopted by the justice court as an order and signed within 21 days; therefore, was a new judgment signed within the justice court's original plenary power. *See* TEX. R. CIV. P. 507.1

22

orders were final and TBAR lacked standing to challenge the justice court's judgment.

"A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005); *see PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) ("A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes."). Collateral attacks on final judgments are generally not allowed because policy favors finality of court judgments. *Browning*, 165 S.W.3d at 345; *Chambers*, 261 S.W.3d at 758.

"Only a void judgment may be collaterally attacked." *Browning*, 165 S.W.3d at 346. "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (citing *Browning*, 165 S.W.3d at 346); *see Rivera*, 379 S.W.3d at 272. A void order is subject to collateral attack in a new lawsuit, while a voidable order must be corrected by direct attack; unless successfully attacked, a voidable judgment becomes final. *Joachim*, 315 S.W.3d at 863.

23

TBAR argues that the justice court's October 3 Supplemental Order is void because it was signed outside the court's plenary power. As we stated above, this argument lacks merit. In analyzing TBAR's collateral attack, we examine the justice court's judgment as including the supplemental order. The justice court thus had jurisdiction over the parties and property, jurisdiction over the subject matter, and capacity to act. *See Joachim*, 315 S.W.3d at 863.

TBAR further asserts that the justice court lacked jurisdiction to enter the particular judgment it entered here, basing its argument on the justice court's alleged failure to comply with the provisions of Health and Safety Code subsections 821.023(d) and (e)(2)(A). These provisions require that, "[i]f the court finds that the animal's owner has cruelly treated the animal, the owner shall be divested of ownership of the animal," and that "[a]fter a court finds that an animal's owner has cruelly treated the animal, the court shall order the owner to pay all court costs," including "the costs incurred by . . . a nonprofit animal welfare organization in . . . housing and caring for the animal during its impoundment." TEX. HEALTH & SAFETY CODE § 821.023(d), (e)(2)(A).

Contrary to TBAR's assertions, the justice court's judgment does not reflect a failure to comply with the requirements of section 821.023. The justice court found, in its October 3 Supplemental Order, that the 24 horses awarded to TBAR "were subject to unintentional mistreatment by Digilio," but it made no findings

24

regarding the treatment of the other 10 horses. Thus, there is no finding that Digilio cruelly treated the horses that are the subject of this suit, and the statutory language requiring that she be divested of those horses and required to pay the enumerated court costs was not triggered. *See* TEX. HEALTH & SAFETY CODE § 821.023(d) (requiring divestiture "if" court finds owner treated animal cruelly); *id.* § 821.023(e)(2)(A) (requiring award of costs, including cost of housing and caring for animal during impoundment, "after" court finds animal's owner treated it cruelly).

Even if the record demonstrated the justice court's failure to properly apply the provisions of chapter 821—a conclusion we do not make here—TBAR has provided no authority indicating that the requirements of section 821.023(d) and (e)(2)(A) are jurisdictional such that misapplying them would render the justice court's judgment void. Mandatory statutory duties are not necessarily jurisdictional. *In re Brehmer*, 428 S.W.3d 920, 922 (Tex. App.—Fort Worth 2014, orig. proceeding) (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001)). Absent clear legislative intent, we resist classifying a statutory provision as jurisdictional. *Id.* (citing *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009)). None of the language in subsections 821.023(d) or (e) indicates that a justice court loses jurisdiction over the animal cruelty matter by misapplying the statutory provisions. *See* TEX. HEALTH & SAFETY CODE § 821.023; *see id.* § 821.025

25

(providing that owner may appeal justice court's divestiture order to county court or county court at law and that decision of county court or county court at law is final and may not be further appealed); *cf. In re Brehmer*, 428 S.W.3d at 922–23 (determining that chapter 821's statutory deadlines are not jurisdictional).

Furthermore, Digilio asserts that, because TBAR was not a party to the justice court's judgment, TBAR cannot now collaterally attack that judgment. While it is well-established that an individual who is not a party to a final judgment generally lacks standing to collaterally attack the judgment, there is an exception for individuals who can establish that their interests are directly and necessarily affected by the judgment itself. *See In re Ocegueda*, 304 S.W.3d 576, 580–81 (Tex. App.— El Paso 2010, pet. denied); *Grynberg v. Christiansen*, 727 S.W.2d 665, 666 (Tex. App.—Dallas 1987, no writ); *see also Kingman Holdings, LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 05-15-01353-CV, 2016 WL 8115937, at *5 (Tex. App.— Dallas Oct. 27, 2016, no pet.) (mem. op.) ("A nonparty can collaterally attack an existing judgment if the judgment directly and necessarily affects the nonparty's rights."). Having an "interest affected by the judgment" means having an interest in the subject matter to which the judgment relates. *Caballero v. Vig*, 600 S.W.3d 452, 459 (Tex. App.—El Paso 2020, pet. denied) (citing *Grynberg*, 727 S.W.2d at 667). "Conversely, having only a tangential or indirect interest in the judgment is

insufficient to bestow standing upon a non-party for purposes of allowing a collateral attack on the judgment." *Id.*

TBAR asserts that it has standing to collaterally attack the judgment because its interests were directly and necessarily affected by the justice court's judgment. We disagree. TBAR's interest in the horses is tangential or indirect and flows only from its involvement with the WCDAO. *See id.* Nothing in the justice court's judgment bound TBAR—it was not required to accept ownership of the horses nor payment for the non-profit services it had provided to the county—and nothing in the justice court's judgment stands as a bar against the relief that TBAR seeks. *See Browning*, 165 S.W.3d at 346. Rather, the justice court's judgment resolved the dispute between Digilio and WCDAO.

Finally, we observe that the fact that TBAR was potentially harmed by the justice court's application of subsections 821.023(d) and (e) does not automatically give rise to a private cause of action in favor of TBAR that could have been impacted or barred by the justice court's judgment. *See, e.g.*, *Witkowski v. Brian, Fooshee and Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Dallas 2005, no pet.) (discussing statutory enforcement schemes and holding that courts apply "strict rule of construction" and "imply causes of action only when the drafters' intent is clearly expressed from the language as written"; observing that "a right of enforcement should not be implied simply because the statute 'fails to adequately protect intended

27

beneficiaries'") (quoting *Brown v. Arturo De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004).

Accordingly, TBAR's attempt to relitigate the merits of issues tried in the justice court constitute an impermissible collateral attack on the justice court's judgment. *See Chambers*, 261 S.W.3d at 759 (citing *Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 556 & n.31 (Tex. 2006) and *Browning*, 165 S.W.3d at 346); *see also Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) ("In general, as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, the judgment is not void."). "Errors other than lack of jurisdiction, such as 'a court's action contrary to a statute or statutory equivalent,' merely render the judgment voidable so that it may be 'corrected through the ordinary appellate process or other proper proceedings.'" *Reiss*, 118 S.W.3d at 443. Here, TBAR never intervened in the justice court and, as a non-party to the justice court's judgment, it could not pursue a direct appeal to correct errors that rendered the judgment only "voidable." *See* TEX. HEALTH & SAFETY CODE § 821.025 (procedures for appeal by owner who has been divested of ownership of animal). TBAR further non-suited its other claims for affirmative relief against Digilio, including its claims under theories of quantum meruit, unjust enrichment, and a stable-keeper's lien, leaving only its collateral attack seeking a declaratory judgment voiding the justice court's judgment pending before us.

28

The only claims before this Court on appeal are TBAR's collateral attack seeking a declaratory judgment that portions of the justice court's judgment are void. As set out above, TBAR is not entitled to collaterally attack the justice court's judgment because, as a matter of law, the justice court's judgment is not void. So, TBAR's collateral attack on it fails. *See Rivera*, 379 S.W.3d at 271 ("It is well settled that a litigant may attack a void judgment directly or collaterally, but a voidable judgment may only be attacked directly."). We conclude that the trial court did not err in granting Digilio's motion for summary judgment on this ground.[5]

We overrule TBAR's complaints on appeal and affirm the trial court's judgment denying TBAR's claims for declaratory relief from the justice court's judgment.

**Digilio's Appeal**

In her sole issue on appeal, Digilio challenges the trial court's grant of summary judgment in favor of TBAR, ordering that Digilio take nothing on her claims for conversion, tortious interference with a contract, and injunctive relief.

The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the

---

[5] Because this ground supports the trial court's judgment, we need not address the remaining arguments of the parties.

exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 363 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A "plaintiff must prove damages before recovery is allowed for conversion." *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam); *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 889 (Tex. App.—Dallas 2009, no pet.). The elements of tortious interference with a contract are (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Thus, both of these causes of action require evidence of damages in order for a plaintiff to recover. *See id.*; *Deaton*, 939 S.W.2d at 147.

Relevant here, TBAR moved for no-evidence summary judgment against Digilio on her claims for conversion and tortious interference. TBAR asserted that Digilio provided no evidence of her damages flowing from TBAR's purported acts interfering with her ownership of the seven horses that Digilio was awarded by the justice court. Thus, the burden shifted to Digilio to present evidence raising a genuine issue of material fact as to this element challenged in TBAR's motion. *See* Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc.*, 206 S.W.3d at 582.

In her response, Digilio asserted that TBAR "was placed on notice" of her claims prior to the appointment of the receiver in the McCumber case, that "every entity involved in this case," including the WCDAO and justice court, "contends Digilio's seven (7) horse[s] should be returned to Digilio [rather] than to [TBAR]," and that there was no finding that she treated those seven horses cruelly. She also pointed to the trial court's previous summary judgment rulings, denying TBAR affirmative relief on its own declaratory judgment claims and this Court's judgment affirming the trial court's denial of TBAR's temporary injunction against Waller County. However, Digilio did not provide any evidence of harm that she suffered as a result of TBAR's alleged conversion or tortious interference.

On appeal, Digilio continues to assert these same arguments. She now argues that TBAR was placed on actual notice of her property interests and of her superior rights to the horses. She points to the trial court's prior denials of summary judgment on TBAR's own motions seeking declaratory judgments as a matter of law and to this Court's opinion affirming the trial court's denial of a temporary injunction against Waller County. Digilio also argues that section 821.023(d) does not apply to the horses awarded to her, that the justice court's October 3 Supplemental Order is final, and that TBAR lacks standing to challenge the justice court's orders.

Digilio asserts in a conclusory fashion that she raised fact issues concerning her affirmative claims for relief, but she has not pointed us to any evidence in the

record that demonstrates harm caused to her by TBAR's purported conversion or tortious interference. TBAR argues that she cannot point to any such evidence in light of the other legal proceedings that prevented Digilio from exercising clear ownership of the seven horses. TBAR specifically referenced the underlying dispute regarding ownership of the horses—which involved an interlocutory appeal of a temporary injunction preventing enforcement of the justice court's judgment and extensive litigation—and the receiver's action in the McCumber case, finding that the horses were subject to turnover and requesting that TBAR keep them until the ownership dispute could be resolved. We agree with TBAR.

Accordingly, because Digilio has failed to provide a scintilla of evidence on an essential element of her conversion and tortious interference claims, we conclude that the trial court properly granted TBAR's no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i) (providing that "[t]he court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on challenged elements); *see, e.g.*, *Prudential Ins. Co. of Am.*, 29 S.W.3d at 77 (damages are element of tortious interference claim); *Deaton*, 939 S.W.2d at 147 (plaintiff must prove damages to recover for conversion).

We likewise conclude that, because she cannot recover on her pleaded claims for conversion or tortious interference, Digilio's claim for injunctive relief likewise fails. Injunctive relief is available only if liability is established under a cause of

32

action. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993); *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied). We have held that summary judgment was proper on Digilio's claims for conversion and tortious interference; thus, her injunctive-relief remedy likewise fails. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011) (per curiam). Summary judgment on this ground was also proper. *See* Tex. R. Civ. P. 166a(i).[6]

We overrule Digilio's complaints on appeal and affirm the trial court's take-nothing judgment on her claims against TBAR.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice


Panel consists of Justices Goodman, Landau, and Hightower.

---

[6] Because we conclude that this ground supports the trial court's judgment, we need not address the remaining complaints raised by the parties. *See Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).