**Opinion issued March 8, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00566-CV

————————————

## U.S. EMPLOYEES CREDIT UNION, Appellant

## V.

## FRED EUGENE WARNER, Appellee

On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 1150615

## MEMORANDUM OPINION

U.S. Employees Credit Union appeals from a take-nothing judgment on its

contract claims against Fred Eugene Warner. The Credit Union argues that we must

reverse the judgment because the trial court abused its discretion by: (1) denying the

Credit Union's motion to withdraw deemed admissions; and (2) excluding one of the Credit Union's witnesses from testifying at trial. We reverse and remand.

## BACKGROUND

### Nature of Lawsuit

The Credit Union sued Warner for the breach of two contracts. The first contract was for a credit card, and the second one was for a loan.

### Summary-Judgment Motion and Deemed Admissions

The Credit Union moved for summary judgment. The Credit Union argued that the summary-judgment evidence conclusively proved its right to recover on both contracts. As evidence, the Credit Union attached the two contracts, a notice of default and intent to accelerate, a notice of acceleration, and payoff summaries for each of the contracts. The Credit Union also attached two affidavits. The first affidavit was made by Tara Johnson, a senior collections specialist, who vouched for the aforementioned documents in her capacity as the Credit Union's custodian of records. In her affidavit, Johnson also summarized the circumstances of Warner's defaults. The second affidavit was made by the Credit Union's counsel regarding reasonable and necessary attorney's fees incurred in the suit against Warner.

In Warner's response opposing summary judgment, he relied on deemed admissions to create a genuine issue of material fact and negate the Credit Union's entitlement to judgment as a matter of law. Warner had previously served requests

2

for admissions on the Credit Union, which did not timely respond to them. As a result, the Credit Union was deemed to have admitted several matters. Among other things, the Credit Union was deemed to have admitted that it did not own Warner's account, did not provide any goods or services to Warner, and did not file suit within two years of the last payment that Warner had made on the account.

The Credit Union replied by maintaining that any fact issue created by the deemed admissions was either immaterial to the summary-judgment issues or was material to a defense of lack of standing, which Warner had not pleaded.

The Credit Union also moved to withdraw the deemed admissions. The trial court denied the Credit Union's motion to withdraw the deemed admissions.

The Credit Union moved for reconsideration of the trial court's denial of its motion to withdraw. The Credit Union urged that, "in the midst of the COVID-19 pandemic," it had "mistakenly failed to deliver the responses by the 30-day deadline." The trial court denied the Credit Union's motion for reconsideration.

After denying the Credit Union's motion to withdraw the deemed admissions and its motion for reconsideration of the denial of its motion to withdraw the deemed admissions, the trial court denied the Credit Union's summary-judgment motion on two grounds. First, the trial court held that the Credit Union had not conclusively proved Warner had defaulted. Second, the trial court held that the Credit Union had not conclusively proved it was owed damages in the amount sought.

**Bench Trial**

At the outset of trial, the Credit Union tried to introduce into evidence via a business-records affidavit made by the company's chief executive officer the documents that it had previously submitted in conjunction with its summary-judgment motion, specifically, the two contracts, notice of default and intent to accelerate, notice of acceleration, and payoff summaries. It is undisputed that the Credit Union had timely served the business-records affidavit on Warner 14 days in advance of trial. *See* TEX. R. EVID. 902(10)(A). But Warner objected to the introduction of these documents on the basis that the Credit Union had not timely produced the documents during pretrial discovery.

The Credit Union also intended to have Johnson testify as its corporate representative. Warner objected that Johnson should be excluded as a witness because the Credit Union had not designated her as a corporate representative in discovery and had only identified her as a witness about a week before trial. The Credit Union conceded it had not identified Johnson in discovery, specifically in its responses to Warner's requests for disclosure. But the Credit Union contended that Warner was well aware Johnson could be a witness, in part, because Johnson had participated in the litigation before trial.

Warner argued that if Johnson was excluded as a witness and the documents at issue were excluded as well, then the sole evidence as to whether the Credit Union

4

had standing to bring the contract claims would be the deemed admissions. Because the Credit Union had admitted it did not own Warner's account in the deemed admissions, Warner argued he was entitled to the entry of a take-nothing judgment on both of the Credit Union's contract claims.

The trial court agreed with Warner. It excluded Johnson as a witness, excluded the documents, and rendered a take-nothing judgment on the Credit Union's claims.

## DISCUSSION

### I. Deemed Admissions

The Credit Union argues that the trial court abused its discretion by denying the motion to withdraw the deemed admissions. The Credit Union concedes it did not timely respond to Warner's requests, but it argues that good cause existed for the withdrawal of the admissions. Specifically, the Credit Union argues that it mistakenly believed it had timely answered all discovery requests. It further argues that this "mistaken belief was exacerbated by technological difficulties" it experienced during "the first three months" of the COVID-19 pandemic. According to the Credit Union, when it discovered at mediation that it had not timely responded to Warner's requests for admissions, it immediately tendered its responses during the mediation, which took place almost two months before the bench trial. The day after mediation, the Credit Union moved to withdraw the deemed admissions.

5

## A.    Standard of review

We review a trial court's ruling on a motion to withdraw deemed admissions for an abuse of discretion. *Cleveland v. Taylor*, 397 S.W.3d 683, 694 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In general, a trial court abuses its discretion when its decision on a motion to withdraw deemed admissions is arbitrary, unreasonable, or made without reference to guiding rules and principles. *Id.* To legitimately exercise its discretion, the trial court must have enough evidence before it to support the decision it made. *Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding*, 500 S.W.3d 5, 22 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B.    Applicable law

If a party does not timely respond to requests for admissions, the matters in the requests are deemed admitted without the need for a court order. TEX. R. CIV. P. 198.2(c). Any matters deemed admitted in this fashion are conclusively established unless the trial court, on motion, allows the withdrawal of the admissions. *Boulet v. State*, 189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Because deemed admissions are conclusive absent withdrawal, they prevent a party who did not timely respond from introducing contradictory evidence. *USAA Cty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Ordinarily, the party moving for the withdrawal of deemed admissions must show that good cause exists. TEX. R. CIV. P. 198.3(a). In addition to this showing of

good cause, to allow withdrawal, the trial court must find that the party relying on the deemed admissions will not be unduly prejudiced by their withdrawal and that withdrawal serves to allow the presentation of the merits. TEX. R. CIV. P. 198.3(b).

When deemed admissions dispose of a claim on the merits, good cause for their withdrawal exists so long as there is no evidence of flagrant bad faith or callous disregard for the rules by the party who did not timely respond to the requests for admissions. *Medina v. Raven*, 492 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2016, no pet.). At a minimum, a showing of flagrant bad faith and callous disregard requires evidence that the party was mindful of the deadline and consciously chose not to comply with it. *Ramirez v. Noble Energy*, 521 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Ralls v. Funk*, 592 S.W.3d 178, 183 (Tex. App.—Tyler 2019, pet. denied) (bad faith involves conscious wrongdoing for dishonest or malicious purpose). And because claim-dispositive deemed admissions function as a death-penalty discovery sanction, which implicates due-process concerns, the ordinary burden of proof does not apply; instead, the party opposing withdrawal of the deemed admissions bears the burden to prove a lack of good cause by showing that the party seeking their withdrawal did not timely respond due to flagrant bad faith or callous disregard for the rules. *Medina*, 492 S.W.3d at 62.

The withdrawal of deemed admissions is unduly prejudicial in two situations: when withdrawal will delay trial and when it will significantly impede the ability of the party who opposes withdrawal to prepare for trial. *Ramirez*, 521 S.W.3d at 856.

**C.    Analysis**

**1.    Good cause**

The Credit Union alleged that Warner breached two contracts, one for a credit card and another for a loan. To recover on these contracts, the Credit Union had to prove the existence of valid contracts, performance or tendered performance on its own part, breach of the contracts by Warner, and damages. *AKIB Constr. v. Shipwash*, 582 S.W.3d 791, 806 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Of the 13 requests for admissions propounded by Warner, solely the seventh one, which asked the Credit Union to admit it did not own his account, is dispositive of the merits of the Credit Union's contract claims. *See Shipley v. Unifund CCR Partners*, 331 S.W.3d 27, 29–30 (Tex. App.—Waco 2010, no pet.) (rendering judgment against entity bringing suit to recover credit card debt because entity offered no proof of account ownership and thus lacked standing). None of the other 12 requests for admissions addressed claim-dispositive subjects. To the extent Warner asserted below that the Credit Union's admissions that it did not provide goods or services to him or bring suit within two years of his last payment are claim-dispositive, we disagree. The former admission is not claim-dispositive because

8

lending money and extending credit do not constitute the provision of goods or services. *See Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 234–35 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (bank has cause of action to recover money or credit advanced as loan when customer does not pay credit card account and this claim does not relate to provision of goods or services because making loan does not constitute provision of goods or services). The latter admission is not claim-dispositive because the statute of limitations for breach of contract is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3).

Accordingly, by failing to timely answer Warner's seventh request for admission about the ownership of his account, the Credit Union was deemed to have admitted it did not own Warner's account and thus had no claims it could bring against him. As a result of this deemed admission, the trial court barred the Credit Union from introducing contrary evidence, like the documents the Credit Union had sought to introduce at trial via a business-records affidavit. These documents were the evidence the Credit Union relied on to prove its contract claims on summary judgment and at trial: the two contracts, notice of default and intent to accelerate, notice of acceleration, and payoff summaries for both contracts.

Therefore, because the deemed admission about the ownership of Warner's account was dispositive of both contract claims, the Credit Union was not required to show good cause for withdrawal of this deemed admission. Instead, Warner was

required to negate the existence of good cause for withdrawal of this deemed admission by showing that the Credit Union's untimely response resulted from flagrant bad faith or callous disregard for the rules. *Medina*, 492 S.W.3d at 62.

The Credit Union maintains it failed to timely respond to Warner's requests for admissions by mistake. In the context of deemed admissions, a mistake or accident, as opposed to conscious indifference, constitutes good cause for withdrawal. *Boulet*, 189 S.W.3d at 836. Similarly, lack of care, simple bad judgment, or mistaken beliefs about the status of discovery are not enough to show the kind of flagrant bad faith or callous disregard necessary to deny a motion to withdraw deemed admissions that are claim-dispositive. *Ramirez*, 521 S.W.3d at 859.

Warner does not refer us to any evidence in the appellate record that affirmatively contradicts the Credit Union's claim of mistake. Moreover, we have not located any evidence in the appellate record that could support a trial-court finding that the Credit Union failed to timely respond to the requests for admissions in flagrant bad faith or as a result of callous disregard for the rules. The trial court therefore abused its discretion by implicitly finding that Warner had shown the Credit Union acted in flagrant bad faith or callous disregard for the rules. *See Metro. Ins. & Annuity Co.*, 500 S.W.3d at 22 (trial court cannot legitimately exercise its discretion in absence of evidence supporting decision it makes).

On appeal, Warner tries to avoid this result by arguing that none of the deemed admissions were dispositive of the merits. He posits that the deemed admissions were solely relevant to the trial court's denial of the Credit Union's summary-judgment motion, not the take-nothing judgment the trial court rendered against the Credit Union at trial. But the record contradicts Warner. At trial, Warner argued that the records attached to the business-records affidavit should be excluded and that the deemed admissions established that the Credit Union lacked standing to bring its contract claims because it had admitted it did not own Warner's account. On this basis, Warner requested the entry of a take-nothing judgment. Thus, the deemed admission concerning whether the Credit Union owned Warner's account was dispositive of the merits of the contract claims. *See Ramirez*, 521 S.W.3d at 858–59 (request for admission asking plaintiff to admit that defendant was not proper party to suit amounted to request that plaintiff admit his claim against defendant was invalid and thus was claim-dispositive in nature).

Warner also suggests the record does in fact support a finding of callous disregard based on the Credit Union's violation of other discovery rules. Specifically, Warner relies on a discovery sanction the trial court apparently imposed on the Credit Union after it failed to timely produce documents responsive to Warner's requests for production before the parties' court-ordered mediation, which was held about two months before trial. According to Warner, this discovery

sanction consisted of awarding him the attorney's fees he incurred in connection with the parties' unsuccessful mediation. At trial, Warner's counsel represented that the Credit Union's counsel had not yet paid Warner these attorney's fees.

Neither Warner's requests for production nor the trial court's order imposing sanctions on the Credit Union for its failure to timely respond to these requests before mediation are in the record. But accepting Warner's account at face value, this prior discovery sanction does not support a finding of the kind of flagrant bad faith or callous disregard of the rules that is required to sustain the trial court's refusal to allow the Credit Union to withdraw a claim-dispositive deemed admission.

Whatever obligation the Credit Union may have had to produce documents before mediation in response to Warner's requests for production, the Credit Union ultimately included the documents at issue as exhibits to its summary-judgment motion. Consequently, Warner received these documents before the discovery period came to a close. The parties conducted discovery in this suit at Level 2. Hence, under the circumstances of this case, the discovery period ended 30 days before the trial date. *See* TEX. R. CIV. P. 190.3(b)(1)(B)(i).[1] Given that the Credit

---

[1] Rule 190.3 of the Texas Rules of Civil Procedure was amended after this suit was tried. The version of Rule 190.3 in effect when this suit was pending in the trial court provided that discovery ended the earlier of 30 days before trial or 9 months after the earlier of the first oral deposition or the due date of the first response to written discovery. The 9-month alternative provided in the former rule did not apply because the suit was scheduled for trial within 6 months of the Credit Union's filing of the suit.

Union moved for summary judgment about six weeks before the trial, the Credit Union provided Warner with the documents on which it relied to support its contract claims before the discovery period ended. At trial, Warner conceded he had received the documents at issue before the discovery period ended.

In other words, the prior discovery sanction the trial court imposed on the Credit Union for its failure to timely produce documents in response to Warner's production requests concerned the impact this discovery infraction had on mediation, not trial. This distinction matters because due process requires there to be a nexus between the offender, the offensive conduct, and the discovery sanction imposed. *Zuehl Land Dev. v. Zuehl Airport Flying Cmty. Owners Ass'n*, 510 S.W.3d 41, 55 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Taylor v. Taylor*, 254 S.W.3d 527, 533 (Tex. App.—Houston [1st Dist.] 2008, no pet.). On this record, the Credit Union's failure to timely produce documents before mediation in response to Warner's requests for production bears no relationship to the trial court's refusal to allow the Credit Union to withdraw the claim-dispositive deemed admission and introduce evidence in support of its contract claims at trial. While the Credit Union's initial failure to timely produce the documents at issue may have undermined the mediation, this failure had no impact on trial because the Credit Union ultimately produced the documents on which it relied before the discovery period ended.

13

Moreover, even if the record showed the nexus required by due process was satisfied in this instance, a death-penalty discovery sanction—one that is claim-dispositive—is appropriate solely when the trial court finds an offender's misconduct justifies a presumption that its claims lack merit. *Salomon v. Lesay*, 369 S.W.3d 540, 558 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Warner did not argue in the trial court that any of the discovery misconduct at issue justifies a presumption that the Credit Union's contract claims lack merit. Nor has he done so on appeal. The trial court did not make such a finding, and the evidence in the record does not suggest the Credit Union's contract claims are meritless. On the contrary, but for the claim-dispositive deemed admission, the Credit Union would have introduced documentary evidence in support of its contract claims at trial.

For these reasons, we hold the Credit Union's failure to timely produce documents before mediation in response to Warner's requests for production cannot support a finding of flagrant bad faith or callous disregard for the rules of the kind that could sustain the trial court's later refusal to allow the Credit Union to withdraw the claim-dispositive deemed admission about the ownership of Warner's account.

### 2. Undue prejudice

The record likewise is devoid of evidence that the withdrawal of the deemed admissions would have unduly prejudiced Warner by delaying trial or significantly impeding Warner's ability to prepare for trial. This is an uncomplicated suit in which

the Credit Union alleged Warner owed money under two contracts, one relating to a credit card and the other relating to a loan. The suit's uncomplicated nature is underscored by the fact that a mere six months elapsed between the Credit Union's filing of the suit and the trial date. The Credit Union disclosed the documents on which it relied to support its contract claims when it moved for summary judgment, six weeks or so before trial and before discovery ended. Thus, this is not a case of an attempted trial by ambush. The Credit Union's claims and the evidence on which it relied to support these claims were known well in advance of trial. Finally, the Credit Union first moved to withdraw the deemed admissions almost two months before trial. Had the trial court promptly allowed withdrawal, nothing in the record indicates that this simple case could not have proceeded to trial as scheduled or that doing so would have affected Warner's ability to prepare.

On this record, the lone prejudice Warner would have suffered had the trial court allowed withdrawal of the deemed admissions would have been having to try the case on the merits, rather than prevailing by procedural default. Having to try a case on the merits is not the kind of undue prejudice contemplated by the discovery rules. *See Ramirez*, 521 S.W.3d at 856 (undue prejudice consists of trial delay or inability to prepare for trial in context of withdrawal of deemed admissions).

If having to try a case on the merits could constitute undue prejudice, then claim-dispositive deemed admissions effectively could never be withdrawn. That is

the exact opposite result contemplated by the law governing requests for admissions. Under the governing law, the primary purpose of requests for admissions is to simplify trials by identifying and eliminating discrete factual matters about which there is no genuine controversy. *Boulet*, 189 S.W.3d at 838. Requests for admissions are not intended to be used to demand that a plaintiff admit that it has no cause of action. *Medina*, 492 S.W.3d at 62. However, this is exactly how Warner used his requests for admissions by demanding the Credit Union admit it did not own Warner's account, instead of demanding the Credit Union admit discrete factual matters relevant to the ultimate question of account ownership.

Warner responds that but for the deemed admissions, he would have conducted additional discovery in preparation for trial. Having not had the opportunity conduct this additional discovery, he urges that withdrawal of the deemed admissions would have unduly prejudiced his preparedness for trial.

Texas law has long disapproved of the use of requests for admissions for the purpose of demanding that a plaintiff admit it has no claim. *See id.* Because Warner at the very least should have known his demand that the Credit Union admit it had no claim against him was improper, Warner cannot argue that he reasonably refrained from conducting additional discovery in reliance on the resulting deemed admission to his detriment. *See Time Warner v. Gonzalez*, 441 S.W.3d 661, 668–69 (Tex. App.—San Antonio 2014, pet. denied) (any prejudice arising from withdrawal

16

of deemed admissions due to opposing party's failure to conduct discovery in reliance on improper requests for admissions does not qualify as undue prejudice).

In sum, Warner improperly used his requests for admissions not as a tool to identify and eliminate uncontroverted facts, but as a trapdoor to try and avoid trial altogether. *See Medina*, 492 S.W.3d at 61 (requests for admissions intended to be discovery tool, not trapdoor). Thus, releasing the Credit Union from the trap it fell into, even as a result of its own mistaken failure to timely respond to the requests, could not unduly prejudice Warner. *See id.* at 54–55, 60–64 (reversing trial court's refusal to allow plaintiff to withdraw deemed admissions to requests asking plaintiff to admit defendant was not at fault for accident, plaintiff was not injured in accident, and driver of plaintiff's vehicle failed to maintain proper lookout at time of accident).

### 3. Presentation of the merits

Here, it is indisputable that allowing the Credit Union to withdraw the deemed admissions would have served to allow the presentation of the merits. The trial court's refusal to allow the withdrawal of the deemed admissions foreclosed the Credit Union from presenting any evidence on the merits of its contract claims.

Warner argues that withdrawal of the deemed admissions would not have served to allow the presentation of the merits because the trial court also excluded the Credit Union's corporate representative, Johnson, from testifying at trial. Without Johnson's sponsoring testimony, Warner reasons, the documents on which

17

the Credit Union relied in support of its claims would not have been admissible. Warner therefore maintains that the entry of a take-nothing judgment would have remained proper under the circumstances even if the trial court had allowed withdrawal of the deemed admissions because the Credit Union had no evidence.

We disagree. It is undisputed that the Credit Union tried to introduce the documents supporting its claims via a business-records affidavit. *See* TEX. R. EVID. 803(6), 902(10) (excepting business records from hearsay rule and making these records self-authenticating when accompanied by business-records affidavit). With this affidavit, the documents did not require a sponsoring witness. *See Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 830–34 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (affirming judgment for plaintiff in suit to recover on defaulted loan, subject to remittitur reducing damages to amount supported by evidence, in case in which plaintiff did not call any live witnesses during bench trial and instead submitted documents proving claim via business-records affidavit).

We hold that the trial court abused its discretion by disallowing the Credit Union from withdrawing the claim-dispositive deemed admission as to account ownership, which precluded the Credit Union from introducing contrary evidence at trial and thereby deprived it of the chance to be heard on the merits of its claims. We sustain the Credit Union's first issue to the extent of this claim-dispositive deemed admission. As the other deemed admissions are not claim-dispositive and thus could

18

not serve as the basis for the trial court's judgment for Warner, we need not address whether the trial court abused its discretion in refusing to allow the Credit Union to withdraw them. *See* TEX. R. APP. P. 44.1(a) (providing that court of appeals cannot reverse judgment based on error of law unless error probably caused rendition of improper judgment or prevented appellant from presenting appeal); TEX. R. APP. P. 47.1 (requiring court of appeals to issue written opinion that is as brief as practicable but addresses every issue raised and necessary to finally dispose of appeal).

## II. Excluded Witness

The Credit Union maintains that the trial court also abused its discretion by refusing to allow Johnson to testify as the company's corporate representative. The Credit Union argues that it identified Johnson as its corporate representative more than a month before trial by submitting the affidavit she made in support of the company's motion for summary judgment. The Credit Union further argues that Johnson attended mediation on behalf of the company almost two months before trial. Thus, the Credit Union reasons, Warner was neither surprised nor unfairly prejudiced by Johnson's appearance as a corporate representative at trial.

However, we need not resolve the Credit Union's second issue. The trial court's refusal to allow withdrawal of the claim-dispositive deemed admission and its concomitant refusal to allow the Credit Union to introduce evidence in support of its claims at trial require us to reverse the trial court's judgment. *See Ramirez*, 521

19

S.W.3d at 861–62 (party cannot obtain judgment based on deemed admissions that are dispositive of the merits without showing opposing party is not entitled to withdrawal of admissions due to its bad faith or callous disregard for rules). Accordingly, we do not reach the Credit Union's second issue. *See* TEX. R. APP. P. 47.1 (requiring court of appeals to issue written opinion that is as brief as practicable but addresses every issue raised and necessary to finally dispose of appeal).

## CONCLUSION

We reverse the trial court's take-nothing judgment and remand this cause to the trial court with instructions to grant the Credit Union's motion to withdraw the claim-dispositive deemed admission and conduct a new trial. *See Medina*, 492 S.W.3d at 60 (withdrawal of admissions and new trial are proper remedy).



Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Farris.